Barbara S. Fulton v. Commissioner. Estate of Weston M. Fulton, Deceased, Robert W. Fulton, Barbara S. Fulton, and John H. Murrian, Executors v. Commissioner.
Barbara S. Fulton v. Commissioner
Docket Nos. 16037, 16038.
United States Tax Court
1949 Tax Ct. Memo LEXIS 190; 8 T.C.M. (CCH) 455; T.C.M. (RIA) 49110; May 10, 1949
*190 George E. H. Goodner, Esq., Munsey Bldg., Washington, D.C., for the petitioners. Edward L. Potter, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in gift tax for 1943 of $9,544.40 against Barbara S. Fulton and of $3,084.70 against the estate of Weston M. Fulton. The only issue for decision is whether the Fultons made taxable gift when they transferred preferred stock of a corporation to that corporation at a price of $35 per share. Findings of Fact Weston M. Fulton and Barbara S. Fulton were husband and wife, who resided during 1943 in Knoxville, Tennessee. They had a son and three daughters. Neither Weston nor Barbara filed any gift tax return for 1943. The W. J. Savage Company has been in existence for many years and was owned prior to 1928 by W. J. Savage. He sold the common stock in 1928 to Weston M. Fulton and at that same time the corporation issued 1,000 shares of its 6 per cent cumulative preferred stock to Savage, dividends on which were payable only out of net earnings. The Fultons acquired the preferred stock from Savage in 1938 at $25 per share. The Fultons gave one-half of the *191 common stock to John H. and James A. Murrian in 1928 or shortly thereafter in order to induce them to give up a partnership business which they were conducting and take over the operation of the W. J. Savage Company. The Murrians were brothers of Barbara. The following table shows the stockholders and officers of the corporation and the shares of stock held by each in the early part of 1943: Com-
Pre-
mon
ferred
Name
Office
Stock
Stock
John H. Murrian
President
2 1/2
James A. Murrian
Vice President
and General
Manager
2 1/2
Weston M. Fulton
Chairman of
the Board
200
5
800
Barbara S. Fulton
Total outstand-
ing
10
1,000
The record does not show how Barbara acquired her common shares from her husband. The Fultons and Murrians had never received any dividends on their stock up to May 24, 1943. The accumulated dividends on the preferred stock on May 24, 1943 amounted to about $100 per share. The Murrians had been operating the business of the company since about 1928. The business consisted of the operation of a machine shop and foundry. It had not been profitable and had never paid any income taxes prior to 1940. *192 Net income of about $7,500 for 1940, $65,000 for 1941 and $60,000 for 1942, before taxes, was reported, mostly from government war contracts. The prospects for 1943 were good. The plant was then running on a 45-hour week with one shift. Fulton worked on experiments and inventions at the plant of the company after 1928 on a part time basis. He received no salary in some years, in others he received a salary which ranged between $125 a month to $325 a month, depending upon the amount of money which the corporation had available for that purpose. His salary for 1942 was $4,611.50. Each of the Murrians received a salary of $12,555.75 for 1942. The Murrians, realizing that the prospects of earning dividends on the common stock would not be good as long as the preferred stock was outstanding, suggested to Fulton in the early part of 1943 that the Fultons sell their preferred stock to the corporation in order to provide the Murrians with an opportunity to receive some dividends on their common stock, if their operation of the company continued to be successful. Each of the Murrians had been offered positions elsewhere at salaries higher than those they were receiving from the W. J. Savage *193 Company. Fulton was familiar with the entire situation. He agreed on behalf of himself and his wife to sell all of their preferred stock, together with their rights to accumulated dividends thereon, to the corporation for $35 per share. Murrian agreed and the sale was made. The price was agreed upon at arm's length with no disposition on the part of Fulton to make a gift or on the part of Murrian to receive a gift on behalf of the corporation or the common stockholders. The closing balance sheets for 1942 showed preferred stock at $100,000, common stock at $109,453.02 and a deficit of $26,288.49. The Commissioner determined that Barbara S. Fulton made a gift of $39,935.63 in 1943 which he explained as follows: "On May 24, 1943 donor transferred 800 shares of the cumulative 6% preferred stock par $100.00 of the W. J. Savage Co. of a market value of $107,871.26 to said corporation for a consideration of $28,000.00 thus effecting a gift of $79,871.26 to the three common stockholders. Inasmuch as donor owned one-half of the outstanding common stock, only one-half of said gift is taxable as gifts to the other two common stockholders and two exclusions are allowed. Internal Revenue Code Sec. 1002 *194 ; Regulation 108 Sec. 86. 8." The Commissioner determined that Weston M. Fulton made a gift of $19,967.81 in 1943 and gave the following explanation: "On May 24, 1943, donor transferred 200 shares of the cumulative 6% preferred stock of a par value of $100.00 of the W. J. Savage Co., of a market value of $26,967.81 to the said corporation for a consideration of $7,000.00 thus effecting a gift of $19,967.81 to the three common stockholders. Internal Revenue Code Sec. 1002; Regulation 108 Sec. 86.8." The transfer of 800 shares of the preferred stock of W. J. Savage Company, with rights to accumulated dividends thereon, made by Barbara S. Fulton to W. J. Savage Company at $35 per share and a similar transfer of 200 shares by Weston M. Fulton were arm's length transactions for a full and adequate consideration in money or money's worth. Opinion MURDOCK, Judge: The Commissioner determined that the preferred stock of W. J. Savage Company was worth about $134.84 per share on May 24, 1943 when Fulton, acting on behalf of himself and his wife, sold it to the corporation for $35 per share, and he held that the difference between $35 *195 and $134.84 was a gift by the donors to the common stockholders, with the qualification that only one-half of this difference was a gift from Barbara because she owned one-half of the common stock and was herself receiving the benefit to that extent. The petitioners argue that there was no gift to the common stockholders because they received nothing. However, the real question is whether or not there was a gift to any one. The 1942 return of the corporation shows that it reported net income beginning in 1940 and running through 1941 and 1942. The balance sheet for the end of 1942, forming a part of that return, would indicate a book liquidating value for the preferred stock of about $183 a share. The prospects for 1943 earnings were good. The only sale shown was that made by Savage to the Fultons in 1938 at $25 per share. The corporation had never had net earnings out of which to pay dividends on any of its stock. John H. Murrian, the president of the company, testified that the negotiations between him and Fulton, which culminated in the purchase of the stock by the corporation at $35 per share on May 24, 1943, were at arm's length, were solely for a business purpose, and did not *196 involve any donative intent. The Fultons had four children who would be more obvious objects of their bounty than would the Murrians. Murrian testified that in his opinion the fair market value of the preferred stock at that time was not in excess of $35 per share. The Fultons had given one-half of the common stock to the Murrians, apparently in 1928, in order to induce them to take over the management of the corporation. Although the return for 1942 shows that Fulton was Chairman of the Board, devoted part of his time to its business, and received a salary of $4,611.50 for that year, nevertheless he did not take an active part in the day-to-day operation of the business but devoted his time exclusively to experimental work and the development of inventions. Murrian and his brother had received offers from other sources under which they would receive higher wages than they were receiving from W. J. Savage Company. Fulton, who acted on behalf of himself and his wife, was entirely familiar with the affairs of the corporation. He and Murrian met and agreed upon a price of $35 per share after negotiating in regard to the price. The evidence as a whole preponderates somewhat in favor *197 of the contention of the petitioners that there was no gift. Decisions will be entered for the petitioners.